**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **KEIDRICK C. WOOTEN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 07-00478-CG-C** |
| ) | |
| **QUICKEN LOANS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This matter is before the court on defendant's motion to dismiss (Doc. 6), plaintiffs'

opposition thereto (Doc. 23), defendant's reply (Doc. 32), plaintiffs' additional authority (Doc.

31), defendant's response to additional authority (Doc. 37), plaintiffs' motion to strike (Doc. 24)

and defendant's response to the motion to strike (Doc. 33).  The court finds that the loan-related

documents submitted by defendant are central to the plaintiffs' claims and may be properly

considered without converting the motion to dismiss into a motion for summary judgment.

Therefore, plaintiffs' motion to strike is due to be **DENIED**.  The court also finds that the

allegations of the complaint do not adequately assert a breach of contract claim or a claim for

violation of Section 8(a) of the Real Estate Settlement Procedures Act.  Therefore, defendant's

motion to dismiss is due to be **GRANTED**.

## BACKGROUND

The plaintiffs in this case assert claims under the Real Estate Settlement Procedures Act

(RESPA) and for breach of contract arising from the imposition of loan discount fees in

connection with their loans. (Complaint).  Plaintiffs allege that they entered into loans and paid

loan discount fees, or points, but received no corresponding discount in the interest rates they were charged.  Plaintiffs do not allege that defendant promised a reduced rate and state that plaintiffs did not negotiate for a reduced rate.   Defendant's motion asserts that plaintiffs have failed to allege more than conclusory allegations without a factual predicate and thereby do not comply with Rule 8 or <u>Bell Atlantic Corp v. Twombly</u>, – U.S. –, 127 S.Ct. 1955, 1964-65 (2007).  Defendant contends that it has fully performed under the contract and that it has not violated Section 8(a) of RESPA because: (1) the fee was not split, and (2) loan discount fees are not "settlement services."

**<u>ANALYSIS</u>**

**A. Motion to Strike**

Plaintiffs move to strike the affidavit and documents attached to defendant's motion to dismiss.  Upon a motion to dismiss, the scope of the review is limited to the four corners of the complaint.  <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted).  Submission of evidence outside of the pleadings generally requires conversion of a Rule 12(b)(6) motion into a motion for summary judgment.  <u>Property Management & Investments, Inc. v. Lewis</u>, 752 F.2d 599, 604 (11th Cir. 1985).  However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005).  The loan-related documents submitted by defendant are central to the plaintiffs' claims and are referenced in the complaint.  There does not appear to be any dispute over the authenticity of the loan documents and the affidavit merely states that the documents are true and correct copies.  Thus, the court may

properly consider these exhibits without converting the instant motion to dismiss into a motion for summary judgment.

**B. Dismissal Standard**

A motion to dismiss should not be granted "unless the plaintiff can prove no set of facts which would entitle him to relief." <u>Martinez v. American Airlines, Inc.</u>, 74 F.3d 247, 248 (11th Cir. 1996) (quoting <u>Peterson v. Atlanta Housing Authority</u>, 998 F.2d 904, 912 (11th Cir. 1993)). In making this determination, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." <u>Id.</u>   However, to survive a motion to dismiss, a plaintiff may not merely "label" his claims.   At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting FED.R.CIV.P. 8(a)(2)).   "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." <u>Oxford Asset Management, Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

**C. RESPA**

Plaintiffs claim defendant violated Section 8(b) of RESPA which provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. 2607(b).  Because the fees in this case were paid directly to defendant and no portion of those fees were paid to a third party, defendant contends that 8(b) cannot have been violated.

The fees were never split.  Plaintiffs argue that the Eleventh Circuit has held that a single party can violate 8(a), citing Sosa v. Chase Manhattan Mortg. Corp., 348 F.3d 979 (11th Cir. 2003). Plaintiffs also cite a recent unreported decision from this court, Gunter v. Chase Bank USA, N.A., Case No. 07-cv-00403-KD-M. (S.D. Ala. Oct. 26, 2007).

          As in the instant case, the plaintiffs in Gunter were charged a loan discount fee but allegedly received no interest rate reduction on their loans.  The defendant in Gunter argued that there was no violation because there was no third party with whom the fee was shared or split. The court, relying primarily on Sosa, concluded that a single service provider that receives an undivided fee may violate RESPA.  The court noted that the circumstances in Sosa were different, in that a third party received a portion of the fee in Sosa, but found Sosa's "general pronouncement that two service providers is not required to violate Section 8(b) was explicitly made." Gunter, supra at *11.

           In Sosa, the Eleventh Circuit stated that a single party may violate subsection 8(b) by marking up the charge of another settlement service provider. Sosa, 348 F.3d at 983.  However, in Sosa, unlike here, the defendant shared a portion of the fee with a third party.  The lender in Sosa allegedly marked up the fee charged by the third party and kept the increase.   The third party, which  received a portion of the fee, performed the services and was not alleged to have kicked back money to the lender or to have received any of the alleged inappropriate increase charged to the plaintiff.   The Court concluded that the lender could be liable even though the third party was not.  However, the Court dismissed the Complaint because the plaintiff failed to allege that the lender performed no services in connection with the fee, finding it sufficient that the lender performed the service of retaining the services of a third party. Id. at 983-984 ("[E]ven

4

if [the lender] could not be credited with the actual delivery, [the lender] benefitted the

borrowers by arranging for third party contractors to perform the deliveries. Under these

circumstances, we find it impossible to say that [the lender] performed no services for which its

retention of a portion of the fees at issue was justified.").

The undersigned is not persuaded that Sosa stands for the proposition that an unsplit fee,

like the one involved in Gunter and in the instant case, can violate section 8(b) of RESPA.

Notably, section 8(b) is entitled "Splitting Charges."  It clearly contemplates two actors and the

division of a fee and does not regulate the amount that one provider may charge. See Williams v.

Saxon Mortg. Servs., Inc., 2007 WL 1845642 (S.D. Ala. July 23, 2007); see also  Haug v. Bank

of Am., 317 F.3d 832, 836 (8th Cir. 2003) ("Section 8(b) ... unambiguously requires at least two

parties to share a settlement fee in order to violate the statute."); Boulware v. Crossland

Mortgage Corp., 291 F.3d 261, 266 (4th Cir. 2002) ("The use of the conjunctive 'and' indicates

that Congress was clearly aiming at an exchange or transaction, not a unilateral act.").

RESPA is not a price-control act and does not forbid lenders from receiving excessive

charges for services they provide. Williams, 2007 WL 1845642  at *9; see also Santiago v.

GMAC Mortg. Group, Inc., 417 F.3d 384, 387 (3d Cir. 2005) (finding that Section 8(b) does not

include a cause of action for overcharges but does provide a cause of action for markups); Kruse

v. Wells Fargo Home Mortgage, Inc., 383 F.3d 49, 56 (2d Cir. 2004) ("section 8(b) clearly and

unambiguously does not extend to overcharges."); Krzalic v. Republic Title Co., 314 F.3d 875

(7th Cir. 2002), cert. denied, 539 U.S. 958, 123 S.Ct. 2641, 156 L.Ed.2d 656 (2003) (finding

Section 8(b) is an anti-kickback provision that does not prohibit overcharges); Haug, 317 F.3d at

836 ("Section 8(b) is an anti-kickback provision that unambiguously requires at least two parties

to share a settlement fee in order to violate the statute."); <u>Boulware</u>, 291 F.3d at 265 ("The plain language of § 8(b) makes clear that it does not apply to every overcharge for a real estate settlement service and that § 8(b) is not a broad price-control provision. Therefore, § 8(b) only prohibits overcharges when a "portion" or "percentage" of the overcharge is kicked back to or "split" with a third party.").   While "markups" may violate Section 8(b), "overcharges" do not. <u>Williams</u>, 2007 WL 1845642 at *5; <u>see also</u> <u>Morrisette v. Novastar Home Mortgage, Inc.</u>, 484 F.Supp.2d 1227, 1229-1230 (S.D. Ala. 2007) (finding that Section 8(b) supplies no cause of action against a title insurer that performs services by providing a policy but charges more for those services than the filed rate; such conduct amounts to a non-actionable overcharge, not an actionable markup).

> [A] markup occurs when the settlement service provider hires a third party to provide the service, adding no value itself to the service, and then passes along to the borrower the third party's charge after increasing it by some amount. An overcharge, in contrast, is where the settlement provider performs or claims to perform the service internally, and then charges an amount that the borrower challenges as unreasonable or illegal.

<u>Williams</u> at *5, n 11 (citation omitted).  Under <u>Sosa</u>, markups would implicate Section 8(b) whether or not the third party received a portion of the increase to the regular fee.  There need only be one culpable party.  However, the lender in the instant case did not mark up a third party's fee.  Instead, the lender provided the loan at a higher rate than plaintiffs allege they should have received.  There was no third party service involved.  Thus, the court finds the loan is simply an overcharge; plaintiffs were allegedly charged more for their loan than they believe they should have been.

Plaintiffs argue that HUD has issued a formal policy statement interpreting Section 8(b) which concludes that the circumstances under which 8(b) is violated include when "one

settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, or if the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed." HUD Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,057 (October 18, 2001).   Plaintiffs argue that the discount fees in this case represent "unearned fees" because the fee was charged and no nominal or duplicative work was done.

However, this court has previously rejected the argument that HUD's interpretation of 8(b) should be given deference in a case akin to this one.

> Plaintiffs also criticize Morrisette for refusing to adopt the HUD Statement of Policy 2001-1, 66 Fed.Reg. 53052 (Oct. 18, 2001), wherein HUD opined that Section 8(b) applies where two persons split a fee for settlement services, "any portion of which is unearned," and that it also applies when a service provider charges a fee that "is in excess of the reasonable value of the goods or facilities provided or the services actually performed." 66 Fed.Reg. at 53059. This policy statement has been rejected by a number of courts as contrary to the plain language of Section 8(b). See, e.g., Santiago, 417 F.3d at 387 ("[B]ecause the plain language of Section 8(b) does not provide for a cause of action for overcharges, it is not necessary for us to reach the question whether HUD's interpretation warrants deference."); Kruse, 383 F.3d at 57 (declaring that it could not, and therefore would not, defer to HUD's reading of Section 8(b)); Krzalic, 314 F.3d at 881 ("There is not enough play in the statutory joints to allow HUD to impose its own 'interpretation' [of Section 8(b) ] under the aegis of Chevron."); Boulware, 291 F.3d at 267 (no deference to HUD guidance is appropriate because the text of Section 8(b) is unambiguous, and therefore controls). This Court agrees with and joins those authorities in finding that HUD's policy statement is entitled to no deference with respect to Section 8(b).

Williams, 2007 WL 1845642 at *6 (footnote omitted).

Moreover, even if an unsplit fee was actionable, Section 8(b) only applies to charges for the rendering of a real estate "settlement service."  Defendant argues, and this court agrees, that the interest rate charged in connection with a loan is not a settlement service under Section 8(b).[1]

---

[1]  The court notes that this argument does not appear to have been asserted in Gunter.  In contrast, the defendant in the instant case contends that "this is one of the central reasons ... why

"Settlement Service" is defined by RESPA as "any service provided in connection with a real estate settlement." 12 U.S.C. 2602(3).  The statute lists as examples: title searches, document preparation, rendering of appraisals, and the origination of a loan, including loan processing and underwriting.  These are all services - unlike an agreement to lower the interest rate (a substantive term of the loan) for a fee.  See Greenwald v. First Federal Sav. & Loan Ass'n, 446 F.Supp. 620, 625 (D. Mass. 1978) ("settlement services" are limited by statutory definition and terms such as interest paid on a tax escrow account are not settlement services).

Plaintiffs argue that RESPA was amended in 1992 to include loan discount fees within the definition of "settlement services."  The case which brought on the change, United States v. Graham Mortgage Corp., 740 F.2d 414 (6th Cir. 1984), concerned the service of origination of mortgage loans.[2]

> In United States v. Graham Mort. Corp., 740 F.2d 414, 423 (6th Cir. 1984), the Sixth Circuit held that the making of a mortgage loan was not included in this pre-1992 definition. House Report No. 102-760 indicates that the definition of "Settlement Services" was amended in 1992 specifically in response to Graham Mortgage, to add the phrase "the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)." See P.L. 102-550, § 908(a) (emphasis supplied). The Report states that, "The Committee bill amends the Real Estate Settlement Procedures Act (RESPA) of 1974 (P.L. 93-533) to make clear that for

dismissal is required." (Doc. 37, p. 1).

_____

[2] In Graham, the issue before the court was whether the making of mortgage loans at a reduced charge of points in exchange for referrals of mortgage loan applicants constituted settlement services under Section 8(a).  The mortgage company in Graham provided a real estate brokerage company with interim financing, and in return the realty brokerage agreed to refer to the mortgage company two mortgage loan applicants from its regular brokerage business in addition to referring the purchaser of the home.  In turn, the mortgage company, when making Federal Housing Administration or Veterans' Administration mortgage loans to purchasers of residences sold by the realty brokerage, charged the brokerage fewer points than it charged other sellers. Graham, 740 F.2d at 416.

purposes of RESPA, a settlement service includes the origination of a loan.

Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1298 -1299 (11th Cir. 2002).  However, the revised definition still limits the statutory reach to "services."  Plaintiffs have produced no authority or justification that persuades the undersigned that the expanded definition of "settlement services" includes the substantive terms of a loan, such as the interest rate.

Plaintiffs admit that RESPA does not regulate mortgage interest rates, but contend that charges that impact the interest rate, like Yield Spread Premiums, are within RESPA's reach. However, Yield Spread Premiums are payments made for a settlement service - they are paid to brokers for services rendered by the broker to the lender and the borrower.

> The term "Yield Spread Premium" is used in the mortgage lending industry to refer to a type of payment from a lender to a mortgage broker paid in the context of brokered loan transactions. The premium is a form of compensation that a mortgage broker, acting as the intermediary, receives from the original lender for selling an interest rate to a borrower that is above the lender's par rate for which the borrower qualifies. The borrower accepts this higher rate on the loan in return for paying the broker a reduced origination fee or no fee at all. Essentially, it is a tool by which a borrower may spread the origination fee over the life of the loan.

Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1320 -1321 (11th Cir. 2008).  While the premium paid to a broker is tied to the interest rate, the payment is for services rendered.

Plaintiffs offer a 2004 HUD audit report which reprimanded Guild Mortgage Company of Downey, California, for charging loan discount points for which the interest rates were not reduced.  However, as defendant points out,  the 2004 audit report was issued by HUD's inspector general, who is subject to only limited HUD supervision.  His report is not agency interpretation, was not issued after notice and comment or any agency deliberation, and is not entitled to deference of any kind. Christensen v. Harris County, 529 U.S. 576, 587 (2000).

The court therefore concludes that the allegations of the complaint do not allege a

violation of Section 8(b) of RESPA.

### D. Breach of Contract

The court also finds that plaintiffs' breach of contract claim is due to be dismissed.  To state a claim for breach of contract under Alabama law, plaintiffs must allege: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Reynolds Metals Co. v. Hill, 825 So.2d 100, 105-06 (Ala. 2002) (citing State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)). In the instant case, the plaintiffs' breach of contract claim alleges that "[t]he parties entered into a contract for a mortgage" and "Defendant breached that contract by charging Plaintiffs a loan discount fee without actually providing a lower interest rate or other reasonable service in return." (Complaint, ¶¶ 37, 38).  The complaint does not allege that defendant promised a reduced rate and, in fact, states that plaintiffs "did not negotiate for a buy-down of the interest rate." (Complaint, ¶¶ 8, 9, 10).  Plaintiffs cannot allege a breach where there was no promise to perform.   There is no dispute that plaintiffs received their loans at the rates agreed to by the parties.  Plaintiffs have not asserted a breach of any other term of their contracts.  Thus, the court finds that plaintiffs have failed to adequately assert a breach of contract claim.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to strike (Doc. 24) is **DENIED,** and defendant's motion to dismiss (Doc. 6) is **GRANTED**.

**DONE and ORDERED** this 10th day of March, 2008.

/s/  Callie V. S. Granade

CHIEF UNITED STATES DISTRICT JUDGE